UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VANGIE C. PINKINS                          CIVIL ACTION

VERSUS                                     NUMBER: 09-6820

MICHAEL J. ASTRUE,                         SECTION: "D"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

<u>**REPORT  AND  RECOMMENDATION**</u>


        Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this

matter comes before the Court on the parties' cross-motions for

summary judgment following a decision of the Commissioner of the

Social Security Administration denying plaintiff's application for

Supplemental Security Income ("SSI") benefits. (Rec. docs. 12, 13,

15).

        Vangie  C.  Pinkins,  plaintiff  herein,  filed  the  subject

application for SSI benefits on July 20, 2006, with a protective

filing date of July 13, 2006, alleging disability as of January 1,

2002. (Tr. pp. 59-61, 64).[1]/ In a Disability Report that appears in

———————————————

        [1]/ Plaintiff had previously filed an application for
Disability Insurance benefits which was denied on June 14, 2006

the record the conditions resulting in plaintiff's inability to work were identified as congestive heart failure and high blood pressure. (Tr. pp. 67-73). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on October 26, 2006. (Tr. p. 40-43). Pursuant to her request, a hearing de novo before an Administrative Law Judge ("ALJ") subsequently went forward on April 21, 2008 at which plaintiff, who was represented by counsel, appeared and testified. (Tr. pp. 21-37). On May 19, 2008, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. p. pp. 9-20). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-5). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §1383(c)(3).

In her cross-motion for summary judgment plaintiff frames the sole issue presented for review as follows:

I.    [t]he ALJ failed to give controlling weight to plaintiff's treating physician.

---

following a hearing. (Tr. pp. 64-65). That prior application is not now before the Court and the Court has no jurisdiction to review it. Califano v. Sanders, 430 U.S. 99, 107-09, 97 S.Ct. 980, 985-86 (1977); Muse v. Sullivan, 925 F.2d 785, 787 n. 1 (5th Cir. 1991).

(Rec. doc. 13-2, p. 9).

Relevant to a resolution of the foregoing issue are the following findings that were made by the ALJ:

1.  [t]he claimant has not engaged in substantial gainful activity since 7/13/2006, the application date (20 CFR 416.920(b) and 416.971 <u>et</u> <u>seq</u>.).

2.  [t]he claimant has the following severe impairments: hypertension, cardiac problems and obesity (20 CFR 416.920(c)).

3.  [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

5.  [t]he claimant has no past relevant work (20 CFR 416.965).

6.  [t]he claimant was born on March 4, 1957 and was 49 years old, which is defined as a younger individual. On March 4, 2007, the claimant attained age 50 which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.  [t]he claimant has at least a high school education and is able communicate in English (20 CFR 416.964).

8.  [t]ransferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  [c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. [t]he claimant has not been under a disability, as
    defined in the Social Security Act, since July 13, 2006,
    the date the application was filed (20 CFR 416.920(g)).

(Tr. pp. 14, 15, 17).

Judicial review of the Commissioner's decision to deny SSI benefits is limited to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not

4

the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. <u>Harrell</u>, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. an individual who does not have a "severe impairment" will not be found to be disabled.

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

5. if an individual's impairment precludes her from

performing her past work, other factors, including age,
education, past work experience, and residual functional
capacity, must be considered to determine if other work
can be performed.

On the first four steps of the analysis, the claimant bears
the initial burden of proving that she is disabled and must
ultimately demonstrate that she is unable to perform the work that
she has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5,
107 S.Ct. 2287, 2294 n.5 (1987). If the analysis reaches the fifth
step, the ALJ may establish that other work is available that the
claimant can perform by relying exclusively on the Medical-
Vocational Guidelines of the Regulations when the claimant suffers
only from exertional impairments or when her non-exertional
impairments do not significantly affect her residual functional
capacity. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990);
Fraga, 810 F.2d at 1304. Once the Commissioner demonstrates that
the individual can perform other work, the burden then shifts back
to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d
1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

At the time of the administrative hearing that was held on
April 21, 2008 plaintiff was fifty-one years of age, had a high
school education, and had last worked as a short order
cook/dishwasher in 1996. She possessed a driver's license but had
not driven since 2000. When asked why she was unable to work

6

plaintiff testified that she suffered from weakness, swelling to the legs and feet, fatigue, and stiffness. Weakness was generally in the legs and would occur spontaneously with episodes lasting ten to fifteen minutes. After standing for a period of time plaintiff had to lay down but she did try to move around and rub the affected area for relief. She also testified that her left shoulder felt heavy. Plaintiff's condition was monitored by Dr. Winfrey who had prescribed various medications including K-Tab, Metformin, Zocor, Lasix, Currin, and Hyzaar. The Lasix did help with plaintiff's swelling but caused her to urinate more frequently. Plaintiff's doctor had taken her off of prescription strength Motrin and advised her to take over-the-counter pain medication which provided little to no relief.

In terms of daily activities, plaintiff testified that she did "much of nothing." She reportedly could not grocery shop or cook but she was able to prepare sandwiches and cereal. Plaintiff could possibly do a load of laundry from time to time. She still socialized with relatives but had difficulty getting out of her house secondary to pain. Plaintiff generally got along with others but was often depressed. Despite eating diet food, plaintiff still weighed two hundred fifty-four pounds which was down from two hundred eighty-six in October of 2006. Plaintiff estimated that she could walk only one block before getting weak and tired but she

also testified that she would walk to relieve cramps but would then have to sit for a while. She could lift a gallon of milk albeit with both hands. (Tr. pp. 24-34).

Upon being tendered to her attorney for further questioning plaintiff testified that she no longer cooked because she frequently dropped things and, by way of example, had burned herself while flipping an egg. Her son and daughter performed the household chores but plaintiff did admit that she tried to vacuum a little. Plaintiff's feet were constantly swollen and tingled causing her to lay down for fifteen to twenty minutes at a time before having to get up and move around. In total, plaintiff estimated that she spent roughly half of the day laying down. (Tr. pp. 34-36). In closing, plaintiff's attorney argued that plaintiff was disabled based on her history of cardiomyopathy, congestive heart failure, hypertension, metabolic syndrome, anemia, depression, obesity, three-pillow orthopnea, lower extremity edema, and fatigue. In support of that argument counsel pointed to Dr. Winfrey's opinion in March of 2006 that plaintiff had a residual functional capacity for less than sedentary work, could sit for eight hours but was unable to lift ten pounds, and was markedly impaired in her ability to complete a normal workday or workweek without interruptions from medically-based symptoms and to perform at a consistent pace without an unreasonable length of rest

periods. In addition, counsel argued that Rule 201.14 of the Medical-Vocational Guidelines directed a finding of disability. (Tr. pp. 36-37).

Initially, the Court questions the temporal scope of the relevant documentary evidence that needs to be discussed to resolve the matter at hand. As noted earlier, plaintiff protectively filed her application for SSI benefits on July 13, 2006 alleging disability as of January 1, 2002. Under the applicable Social Security Regulations, the Commissioner is typically required to develop a claimant's medical history for the twelve-month period preceding the date that the application was filed, 20 C.F.R. §416.912(d), but benefits are not payable prior to that date. 20 C.F.R. §416.335. As was also noted earlier, plaintiff had previously filed an application for Disability Insurance benefits which was denied on June 14, 2006 following a hearing and further review of that denial was apparently not sought. As a result, the June 14, 2006 denial became the final, binding decision of the Commissioner, 20 C.F.R. §416.1455, which established that plaintiff was not disabled from the onset date alleged in that earlier application, whatever that may have been, through the date of the denial. In apparent recognition of that preclusive effect, the Court further notes that in plaintiff's counsel's letter brief to the AC in the wake of the ALJ's decision in this case, counsel

represented that the alleged onset date was June 15, 2006, the day following the denial of her previous application for Disability Insurance benefits. (Tr. p. 96).  Nevertheless, as defendant makes no argument that the documentary evidence to be discussed should be limited in any way, the Court turns to said evidence of record.

On December 6, 2005, plaintiff presented herself to the Rapides Regional Medical Center ("RRMC") with complaints of right-sided chest pain radiating to the right neck and arm since the previous day.  The pain was described as sharp and a level "9" on a ten-point scale but was not associated with activity. Plaintiff's past medical history was said to be positive for hypertension, congestive heart failure, and coronary artery disease. Past medical history included a left heart catheterization in June of 2003.  The "review of systems" portion of the hospital report documented that plaintiff complained of a slight headache in addition to sinusitis, a cough, slight shortness of breath, chest pain, heartburn, and indigestion. Plaintiff was admitted to RRMC with an admission diagnosis of right-sided chest pain, coronary artery disease, hypertension, and hyperlipidemia.  An EKG that was performed on December 7, 2005 revealed a normal sinus rhythm and no active pulmonary process was identified via a chest x-ray.  A CT of the chest was negative.  Plaintiff underwent left heart catheterization on December 9, 2005 which showed normal coronaries

and LV function.  In light of the normal test findings, plaintiff was thereupon discharged from RRMC in satisfactory condition with a diagnosis of improving right-sided chest pain, coronary artery disease which was disproved by the left heart catheterization, hypertension, and hyperlipidemia.  Discharge instructions included weight loss, no heavy lifting for five days, normal activities to be resumed the following day, and follow-up with Dr. Younes. Medications included Protonix, Coreg, Zocor, Hydrochlorothiazide, and Motrin. (Tr. pp. 108-113, 130-133, 145).

On January 10, 2006, plaintiff was seen by Dr. Keith Winfrey of the Rapides Primary Health Care Center ("RPHCC") after having been advised to find a primary care physician.  Plaintiff stood at 5'5" tall and weighed two hundred sixty-eight pounds with her blood pressure being measured at 140/79.  The "review of systems" portion of the note was positive for three-pillow orthopnea, dyspnea on exertion after walking one block, and lower extremity edema.  The impression was hypertension and hyperlipidemia. (Tr. p. 123). Plaintiff returned to RPHCC on January 24, 2006 for follow-up and a wellness exam.  A physical exam produced no convincing evidence of myocardial injury.  The assessment was stable cardiomyopathy. Ibuprofen and HCTZ were prescribed. (Tr. pp. 121-122).  Bloodwork that was performed on February 16, 2006 produced slightly abnormal results with elevated glucose and carbon dioxide levels and

decreased levels of potassium and cholesterol/HDL. (Tr. pp. 125, 138-140).

Plaintiff was next seen at RPHCC on February 21, 2006 for complaints of pain and swelling of the right foot for the previous twenty-four hours. On examination the extremity was warm, slightly tender, and erythematous. The assessment was early cellulitis of the right foot, hypokalemia, normocycitc normochromic anemia, and glucose intolerance. Medications were prescribed including Keflex, KCL, and FeSoy. (Tr. pp. 119-120). Additional labwork that was done on March 17, 2006 revealed slightly decreased levels of hemoglobin and hematocrit. (Tr. pp. 124, 134-135).

On March 21, 2006, plaintiff was seen again at RPHCC for a follow-up visit. By that time the condition of her right foot was significantly improved with no evidence of erythemia or swelling and only minimal tenderness. Plaintiff's weight was recorded as two hundred sixty-four pounds and her blood pressure was 134/68. The impression was a history of cardiomyopathy, generalized deconditioning, obesity, anemia, and glucose intolerance. Plaintiff was referred to physical therapy for range of motion and conditioning exercises and it was suggested that she lose weight and modify her lifestyle. Prescription refills were issued for Coreg, HCTZ, Ibuprofen, KCL, Zocor, and Protonix. It was also noted that she continued on KCL. (Tr. pp. 118, 146-147). On that same

date, Dr. Winfrey completed a three-page "Physical Capacity Evaluation" ("PCE") form setting forth therein his opinions on plaintiff's capabilities. There, Dr. Winfrey indicated that plaintiff could stand and walk less than one hour per eight-hour workday and could sit for less than eight hours per eight-hour workday. Dr. Winfrey further found that plaintiff could occasionally lift/carry less than ten pounds; could use her hands for simple grasping and handling, pushing and pulling, and for fine manipulation and fingering but could not use her feet for operating foot controls. She could occasionally bend and climb stairs but could never kneel, squat, crawl or climb stairs; but she was able to reach above shoulder level. The foregoing limitations were attributable to "deconditioning." Finally, Dr. Winfrey opined that plaintiff had a moderate limitation in her ability to perform activity within a schedule, to maintain regular attendance and to be punctual. She had a marked limitation in her ability to complete a normal workday and work week without interruptions from medically-based symptoms and to perform work at a consistent pace without an unreasonable number and length of rest periods. Lastly, Dr. Winfrey opined that plaintiff was able to tolerate mild stress only. (Tr. p. 127-129).

Additional bloodwork was done on July 7, 2006 which revealed an elevated glucose level. (Tr. pp. 117, 182, 141). Plaintiff

returned to Dr. Winfrey on July 12, 2006 for follow-up care and a refill on her medications. The "review of systems" portion of the note was significant for strong, recurring chest pain at a level of "8" and left-sided pain radiating to the left lower extremity. Plaintiff's weight was two hundred seventy-four pounds and her blood pressure was measured at 154/94. A repeat ECG was within normal limits after an initial one produced borderline results. The assessment was hypertension, metabolic syndrome, anemia, and atypical chest pain. Various medications were refilled but Ibuprofen was discontinued. (Tr. p. 181, 143-144).

On July 26, 2006, plaintiff completed the Administration's "Function Report-Adult" form that elicited information about her capabilities. Plaintiff described a typical day as involving brushing her teeth and dressing, taking her medication, eating something to calm her stomach, elevating her feet while watching TV, talking with family members, taking her medication again, and then retiring. Plaintiff reported episodes of being awakened at night with cramps in her legs and joints and occasional bouts of incontinence. She prepared none of her own meals and was unable to do any house or yardwork because of cramps and swelling of the feet and heart trouble. Plaintiff did no driving or shopping and was unable to manage her own personal finances secondary to being unable to work to earn her own money. Hobbies included reading and

watching TV and talking with relatives on the phone or having them over to visit. Her conditions affected a host of abilities such that she could walk only twenty feet or for about two minutes before needing a five-minute rest period, could stand for only two minutes, and could sit for only five minutes.  Plaintiff could follow instructions very well and could pay attention for thirty minutes but had problems with stress and changes in routine. (Tr. pp. 75-82).

On October 7, 2006, plaintiff was consultatively evaluated by Dr. Jeff Kenny, an internist, on behalf of the Louisiana Disability Determination Services.  Plaintiff reported a history of multiple hospital admissions for chest pain and to suffering from congestive heart failure but the documentary evidence that was reviewed by the doctor proved otherwise.  Plaintiff indicated that she experienced edema in the feet and ankles and tight chest pain on the left once per week.  The pain typically lasted about two minutes and was relieved either with nitroglycerin or rest.  In terms of daily activities, plaintiff reported that she could feed and dress herself but could only stand five minutes at a time or in an eight-hour workday, could walk on level ground only for a couple of feet, could sit for only ten minutes, was only able to lift a coin, did not drive, and was unable to do any household chores, shopping, stair climbing, yardwork, or cooking.

On physical examination, plaintiff weighed two hundred eighty-six pounds and her blood pressure was 141/93. Plaintiff was observed to ambulate in a normal fashion and to get on and off the examination table and up and out of a chair without difficulty. Her heart had a regular rate and rhythm, normal S1 and S2 sounds, and no murmurs, rubs, or gallops. An examination of plaintiff's extremities revealed no edema and no joint swelling, redness, or effusions. Her gait and station were normal and her grip strength was 5/5 bilaterally. Straight leg raising was negative; plaintiff was able to heel/toe walk and to squat, and motor strength was 5/5 throughout with no atrophy. She had a normal sensory exam and deep tendon reflexes. Dr. Kenny's impression of plaintiff was a forty-eight year old individual with a history of hypertension and with a normal gait and station. There was no shortness of breath; range of motion was completely normal; and a diagnosis of congestive heart failure was disproved by the results of the left heart catheterization that was performed in December of 2005. In summary, Dr. Kenny opined that plaintiff "... did not demonstrate a significant limitation based on today's history, physical and chart review." (Tr. pp. 149-151).

Additional bloodwork that was performed on October 9, 2006 at the request of RPHCC revealed elevated levels of serum glucose, cholesterol, and hemoglobin Alc. (Tr. pp. 178-180). Plaintiff was

seen again at RPHCC three days later for a follow-up visit and the "review of systems" portion of the note was said to be significant for recurring chest pain. The diagnosis was a history of cardiomyopathy, hypertension, hyperlipidemia, obesity, glucose intolerance, and atypical chest pain. Plaintiff's medications were adjusted. (Tr. p. 177). At a follow-up visit to RPHCC on October 27, 2006, plaintiff's weight was recorded at two hundred seventy pounds and her blood pressure was 155/94. (Tr. p. 176).

The next documented doctor's visit went forward on January 29, 2007 when plaintiff returned to Dr. Winfrey for a check-up and to obtain a statement from him for Social Security benefits application purposes. Plaintiff's weight was down to two hundred fifty pounds but her blood pressure was 160/95. The assessment was stable cardiomyopathy, poorly-controlled hypertension secondary to noncompliance with medications for two months, and hyperlipidemia. Plaintiff's medications were adjusted and a statement was reportedly written on her behalf. (Tr. p. 175).

On February 21, 2007, further bloodwork was done which again revealed slightly elevated rates of serum glucose, LDL cholesterol, and hemoglobin Alc. (Tr. pp. 173-174). Another follow-up visit to RPHCC went forward on February 26, 2007 when plaintiff's weight was recorded at two hundred seventy-two pounds and her blood pressure was 151/88. On this date the sole diagnosis was glucose

intolerance. (Tr. p. 172). Plaintiff returned to RPHCC on March 19, 2007 and complained of fatigue, insomnia, a depressed mood, difficulty concentrating since 2005, and frequent crying spells. The assessment was glucose intolerance and depressive symptoms. Medications including Wellbutrin were prescribed. (Tr. p. 171). Plaintiff failed to keep an appointment at RPHCC that was scheduled for April 16, 2007. (Tr. p. 170). She did return to the clinic for a follow-up appointment on April 27, 2007 and she voiced no complaints of chest pain or shortness of breath. The assessment was well-controlled hypertension and cardiomyopathy. Plaintiff's medications were adjusted. (Tr. p. 169).

Yet even more bloodwork was performed on plaintiff on May 8, 2007 which revealed slightly decreased levels of hemoglobin, hermatocrit, monocytes, and potassium and slightly elevated levels of lymphs and glucose. (Tr. pp. 166-168). Plaintiff returned to Dr. Winfrey for follow-up and to obtain the lab results on May 11, 2007 at which time she weighed two hundred seventy-nine pounds and her blood pressure was 134/86. The assessment was glucose intolerance, hyperlipidemia, anemia, hypertension under good control, and acute bronchitis. Medications were prescribed. (Tr. p. 165). By May 24, 2007, plaintiff reported that her cough had resolved. (Tr. p. 164).

Plaintiff returned to Dr. Winfrey on July 30, 2007 for follow-

up and to have her medications refilled. Her weight was recorded as two hundred sixty pounds and her blood pressure was 119/70. Plaintiff's medications were adjusted which included Metformin, Coreg, Hyzaar, Lasix, Zocor, and Klor-con. The overall assessment was glucose intolerance and hypertension. (Tr. p. 163). Plaintiff had a slightly elevated level of serum glucose and hemoglobin Alc when she was next seen by Dr. Winfrey on September 24, 2007. The assessment was hypertension under good control, glucose intolerance, and hyperlipidemia. (Tr. pp. 160-162).

On October 10, 2007, plaintiff was seen again at RPHCC for her annual women's health evaluation. Plaintiff voiced no concerns or health complications but had not taken her blood pressure medication that morning which was measured 140/84. (Tr. pp. 155-159). Her weight was down to two hundred fifty-four pounds when she returned to Dr. Winfrey for medication refills on November 7, 2007. The assessment was paroxysmal nocturnal dyspnea ("PND"), hypertension, glucose intolerance, a history of cardiomyopathy, and hyperlipidemia. Various medications were prescribed. (Tr. p. 154). Plaintiff's weight was recorded as two hundred sixty-eight pounds on November 26, 2007 and the assessment was episodic PND and hypertension. (Tr. p. 153).

Plaintiff returned to RPHCC on January 23, 2008 for follow-up care and to have her medications refilled. Her blood pressure was

109/70 and she denied any chest pain, shortness of breath, or dizziness. The assessment was episodic PND that had resolved, stable hypertension, glucose intolerance, and hyperlipidemia. Bloodwork was ordered and plaintiff was given refills for Coreg, Hyzaar, K-Tab, and Zocor. (Tr. p. 186). The bloodwork was done on February 25, 2008 which revealed slightly decreased levels of hemoglobin and slightly elevated levels of serum glucose. (Tr. pp. 184-185). Plaintiff was seen by Dr. Winfrey one final time on February 29, 2008 for a checkup. She denied chest pain, shortness of breath, PND, or orthopnea. The assessment was glucose intolerance, hypertension, and hyperlipidemia. Plaintiff's prescriptions for Lasix and Metformin were refilled and lifestyle modification was recommended. On this date, plaintiff weighed two-hundred fifty-four pounds and her blood pressure was 122/75. (Tr. p. 183).

As noted earlier, plaintiff challenges the Commissioner's decision to deny SSI benefits on only one ground, that the ALJ failed to give controlling weight to the opinions of Dr. Winfrey, her treating physician. For the reasons that follow, the Court believes that the ALJ gave proper weight to the evidence that was before him.

The law is clear that the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject

the opinion of <u>any</u> physician when the evidence supports a contrary conclusion. <u>Newton v. Apfel</u>, 209 F.3d 448, 455 (5th Cir. 2000)(quoting <u>Paul v. Shalala</u>, 29 F.3d 208, 211 (5th Cir. 1994), <u>overruled in part on other grounds by Sims v. Apfel</u>, 530 U.S. 103, 120 S.Ct. 2080 (2000)). A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. <u>Newton</u>, 209 F.3d at 456 (citing <u>Brown v. Apfel</u>, 192 F.3d 492, 500 (5th Cir. 1999)and <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir. 1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1120, 115 S.Ct. 1984 (1995)). Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion. <u>Newton</u>, 209 F.3d at 456; <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (5th Cir. 1995); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1057 (5th Cir. 1987); <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985). The Regulations require the ALJ to perform a detailed analysis of a treating physician's views under the criteria set forth in 20 C.F.R. §416.927(d) <u>only</u> in the absence of controverting medical evidence from other treating and/or examining physicians. <u>Newton</u>, 209 F.3d at 453.

On December 6, 2005, plaintiff was admitted to RRMC for a complete cardiac workup after experiencing chest pain since the previous day. An EKG that was performed during the admission

produced normal results as did chest x-rays.  The existence of coronary artery disease was disproved following left heart catheterization which revealed normal coronaries and LV function. Plaintiff was thereupon discharged with a recommendation to lose weight and to avoid heavy lifting for the next five days.  The latter short-term limitation would prove to be the only one that was ever imposed on plaintiff's activities by any of her treating physicians.

Subsequent to her discharge, plaintiff began frequenting RPHCC as her primary health care facility where she was primarily followed by Dr. Winfrey.  On January 10, 2006, plaintiff reported three-pillow orthopnea, dyspnea after walking one block, and lower extremity edema.  The assessment was hypertension and hyperlipidemia.  No restrictions were placed on her activities.  No evidence of myocardial injury was revealed following a wellness exam on January 24, 2006 and plaintiff was diagnosed with stable cardiomyopathy. Plaintiff was next seen at RPHCC on February 22, 2006 for complaints of right foot pain and swelling of one day's duration.  The diagnosis included early cellulitis of the right foot in addition to glucose intolerance which would be included in nearly every one of Dr. Winfrey's treatment notes that followed.

By March 21, 2006, the condition of plaintiff's right foot had improved and she was diagnosed with a history of cardiomyopathy,

generalized deconditioning, obesity, and anemia in addition to glucose intolerance. Plaintiff was instructed to attend physical therapy, to lose weight, and to generally modify her lifestyle. Despite the fact that he had by then only seen plaintiff on a total of four occasions, on that same date Dr. Winfrey completed the PCE form that was mentioned earlier and found, _inter_ _alia_, that plaintiff could stand for less than one hour per eight-hour workday, could walk for less than one hour per eight-hour workday, and could lift/carry less than ten pounds. These alleged limitations, however, were not attributed to any specific medical condition but were credited by Dr. Winfrey to generalized deconditioning.

Over the following approximate two-year period plaintiff would be seen by Dr. Winfrey some fifteen more times for follow-up, a check-up, or to obtain medication refills. Plaintiff complained of strong, recurring, radiating chest pain on July 12, 2006, but an ECG was within normal limits and Dr. Winfrey characterized the chest pain as atypical. Once again, no limitations were placed on plaintiff's activities. Two weeks later plaintiff completed the Administration's Function Report and reported therein that she could walk only twenty feet, could stand only two minutes, and could sit for only five minutes. The Court recalls that just four months earlier Dr. Winfrey himself found that plaintiff could sit

for less than eight-hours per eight-hour workday, implying that she could, indeed, sit for a lesser period, including up to seven hours per eight-hour workday.

Plaintiff was subsequently evaluated by Dr. Kenny on October 7, 2006. His review of the RRMC medical records provided little support for the existence of congestive heart failure as plaintiff reported. Plaintiff further reported extremely limited activities which most notably included an ability to walk only a few feet and to lift objects weighing no more than a coin. To be credited, however, such subjective complaints must have objective support. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). On physical examination, plaintiff had a normal gait and station, no joint swelling or redness, 5/5 motor strength throughout with no evidence of atrophy, and a normal sensory exam, deep tendon reflexes, and overall range of motion. Based on his examination of plaintiff and a review of the medical records that he had been provided, Dr. Kenny found that plaintiff suffered from no "significant limitation" whatsoever. Later that month, a disability examiner with the Disability Determination Services reviewed the medical records then extant and similarly concluded that the evidence "... supports the finding of not severe." (Tr. pp. 38-39).

Plaintiff was seen again by Dr. Winfrey for a check-up on

January 29, 2007.  The diagnosis included stable cardiomyopathy and poorly-controlled hypertension secondary to non-compliance with prescribed medication for two months.[2]    Approximately one month later, the sole diagnosis given by Dr. Winfrey was glucose intolerance and again no limitations were placed on plaintiff's activities.   Plaintiff did complain of some transient depressive symptoms on March 19, 2007 and was prescribed Wellbutrin.   No mention of any such lingering symptoms was made on April 27, 2007 and plaintiff had no chest pain or shortness of breath.   The diagnosis was well-controlled hypertension and cardiomyopathy. Plaintiff's hypertension was still well-controlled on May 11, 2007 and she was treated for acute bronchitis which had resolved by May 24, 2007.   A follow-up appointment for medication refills went forward on July 30, 2007 and the assessment was glucose intolerance and hypertension.  By September 24, 2007, plaintiff's hypertension was still under good control.

Plaintiff voiced no health concerns or complications during an annual health evaluation on October 10, 2007.  She saw Dr. Winfrey for medication refills on November 7, 2007 but was then suffering from episodic PND which subsequently resolved within two months.

_____

[2]    Social Security Regulations impose an affirmative obligation upon claimants to follow the treatment prescribed by their physicians. 20 C.F.R. §416.930.

By January 23, 2008, plaintiff had no chest pain, shortness of breath, or dizziness and her hypertension was characterized as stable. No chest pain, shortness of breath, PND, or orthopnea were present on February 29, 2008 and lifestyle modification was again recommended. Throughout this time no limitations were placed on plaintiff's activities.

While the ALJ's opinion in the present case was not as thorough or detailed as it could have been, the evidence that was presented to him did not support a finding of disability. As far as the administrative record reflects, the only limitation that was ever placed on plaintiff's activities was a five-day restriction against heavy lifting subsequent to her discharge from RRMC on December 9, 2005. None of Dr. Winfrey's contemporaneous treatment notes contain any limitations on plaintiff's activities, a circumstance which may properly be considered in determining her disability status. Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995). Moreover, the capabilities and limitations that Dr. Winfrey documented in the PCE form of March 21, 2006 were the product of generalized deconditioning and were not attributable to the existence of a specific impairment or combination of impairments. Indeed, Dr. Winfrey cleared plaintiff to attend physical therapy in an attempt to increase her functionality. Faced with this evidence, the Administration's disability examiner easily concluded

that plaintiff did not even suffer from a severe impairment. Dr. Kenny, whose consultative report is more complete than any of Dr. Winfrey's treatment notes, could identify no condition which limited plaintiff's activities in any significant way. Dr. Kenny's objective findings certainly do not paint a picture of an individual who can walk only a few feet and who can lift only a coin and plaintiff herself contradicted such extreme restrictions in her subsequent hearing testimony. At the time of the ALJ's decision, plaintiff was fifty-one years of age, i.e., a "[p]erson closely approaching advanced age" within the meaning of 20 C.F.R. §416.963(d)); had a high school education (20 C.F.R. §416.964(b)(4)); and, had the residual functional capacity for light work (20 C.F.R. §416.967(b)). Rule 202.13, 20 C.F.R. Subpart P, App. 2, Table No. 2, directed a finding of "not disabled." Procedural perfection in administrative proceedings is not required, Mays v. Bowen, 837 F.2d 1362, 1364 (5th cir. 1988), and substantial evidence supports the Commissioner's conclusion that plaintiff was not disabled.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate

judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this <u>7th</u> day of <u>September</u>, 2010.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE